UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN W KOEHL,

        Plaintiff,

v.                                                                        Case No. 05-C-0384

JOHN BLOSENSKI, *et al.*,

        Defendants.

## DECISION AND ORDER

On August 1, 2004, Officer John Blosenski of the Waupaca Sheriff's Department, while on routine water patrol on Nestling Lake of the Waupaca Chain of Lakes, spotted a personal water craft (a jet ski) operating without lights after dark. (11/15/05 Aff. of Michelle M. Ford, Ex. A.) Wisconsin law requires that any motorboat operating on the State's navigable waters between sunset and sunrise have its lights on, but specifically prohibits the operation of personal watercraft after sunset regardless of whether it has lights. *See* Wis. Stat. § 30.61(1) and (10) (2003-04).[1] When Officer Blosenski pulled the water craft over, he also discovered that the operator, Plaintiff John Koehl, was drunk. (*Id.*) Not surprisingly, Wisconsin also prohibits operating a motorized watercraft on its navigable waters while under the influence of an intoxicant. *See* Wis. Stat. § 30.681(1).

---

[1]All citations to Wisconsin Statutes are to the 2003-04 edition.

Officer Blosenski handled the resulting arrest "by the book," which included placing Koehl under arrest and handcuffing his hands behind his back for transport to the closest medical facility for a blood draw to determine his level of intoxication. Unfortunately, while he was being assisted into a squad car for transport, Koehl accidently struck his forehead on the metal divider between the front and back seats and sustained a minor laceration.[2] Koehl claims he immediately told Officer Blosenski and Deputy Clint Thobaben, who had been called to assist, that he was bleeding, but the officers ignored his statement, failed to stop and administer first aid to Koehl and drove the approximately six miles to the hospital. (DPFOF ¶ 32.) By the time they arrived, blood had dripped onto Koehl's face.

Upset and humiliated at his treatment, Koehl brought this action under 42 U.S.C. § 1983 against Officer Blosenski, Deputy Thobaben, and Waupaca County. Koehl alleges that the officers acted unreasonably and used excessive force when they arrested, frisked, handcuffed and then transported him to the hospital. Koehl alleges that the County is also liable because of its policy requiring that all detainees be handcuffed during transport and because of the unsafe condition of its squad car. Finally, Koehl asserted claims of battery and negligence against the officers under state law.

Koehl originally filed his action in small claims court in Waupaca County where recovery is limited to $5,000. *See* Wis. Stat. § 799.01(1)(d). Defendants removed the action to federal court pursuant to 28 U.S.C. § 1441, asserting jurisdiction under 28 U.S.C. § 1331. They now seek summary judgment on Koehl's federal civil rights claims on the grounds that the officers acted

---

[2]The cut, a superficial laceration to the forehead approximately 0.5 cm. in length, required four 1/8" steri-strips to close. (DPFOF ¶¶ 33, 34.)

2

Case 1:05-cv-00384-WCG   Filed 02/21/06   Page 2 of 15   Document 33

reasonably and did not use excessive force, the county's policies did not result in a constitutional deprivation, and the defendants are shielded by qualified immunity. Defendants also argue that summary judgment should be granted as to Koehl's state law claims. They argue that Koehl's state law claims against Deputy Thobaben should be dismissed because Koehl failed to name Deputy Thobaben in the notice of claim he filed with County or serve him with a copy. More generally, defendants argue that Koehl's battery claim fails because there is no evidence that either officer intended to harm him; indeed, Koehl concedes they did not. (DPFOF ¶ 37; 11/15/05 Ford Aff., Ex. F. at 47.) As to Koehl's claim of negligence, defendants claim they are immune from liability under Wis. Stat. § 893.80(4).

**Summary Judgment Standard**

As is well known, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment

3

motion, however; there must be a genuine issue of material fact for the case to survive. *Id.* at 247-48.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. Therefore, summary judgment is appropriate against a party who, after adequate time for discovery and in the face of a properly supported summary judgment motion, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id*. at 322.

Whether a material issue of fact is "genuine" necessarily requires some qualitative determination of sufficiency of the evidence. To defeat a properly supported motion for summary judgment, the opposing party must present specific and sufficient evidence that, if believed by a jury, would actually support a verdict in its favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. A "metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587. "A district judge faced with [a summary judgment] motion must decide . . . whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572-73 (7th Cir. 1989) (citations omitted).

4

**1. Reasonableness of Arrest**

Koehl first argues in response to defendants' motion for summary judgment that his arrest was unreasonable and illegal. Noting that he was not even charged with a crime (first-time intoxicated boating, like first-time operating a motor vehicle on a highway while intoxicated, is a civil forfeiture in Wisconsin, *see* Wis. Stat. § 30.80), and that he was unarmed, cooperative, respectful and polite, Koehl contends that the officers acted unreasonably in placing him under arrest and handcuffing him. (Pl.'s Br. In Opp. at 9.) Koehl further contends that the officers did not even have the statutory authority to arrest him since he was willing to post the deposit required by law and enter a no contest plea to the citation. Relying on Wis. Stat. § 23.57, Koehl argues that a law enforcement officer had no authority to arrest him without a warrant for intoxicated boating unless he refused to accept the citation or identify himself, or unless his arrest was necessary to prevent imminent harm to the officer or another.[3] Since none of the required conditions was present, Koehl argues his arrest was illegal under Wisconsin law.

---

[3]Wis. Stat. § 23.57, entitled "Arrest without a warrant," provides:

A person may be arrested without a warrant when the arresting officer has probable cause to believe that the person is committing or has committed a violation of those statutes enumerated in s. 23.50(1) ....; and:

(a) The person refuses to accept a citation or to make a deposit under s. 23.66; or
(b) The person refuses to identify himself or herself satisfactorily or the officer has reasonable grounds to believe that the person is supplying false identification; or
(c) Arrest is necessary to prevent imminent bodily harm to the enforcing officer or to another.

Wis. Stat. § 23.57(1).

5

Of course the question for § 1983 purposes is not whether Koehl's arrest violated Wisconsin law, but whether it violated his rights under the Fourth Amendment to the United States Constitution. Clearly, it did not. The Supreme Court has held that when a police officer has probable cause to believe an individual has committed even a very minor offense, the officer may arrest the individual without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding that arrest of motorist for failing to wear seatbelt, a misdemeanor punishable by a maximum $50 fine, did not violate Fourth Amendment). The Seventh Circuit has applied *Atwater* to include civil offenses such as unauthorized ticket sales. *Chortek v. City of Milwaukee*, 356 F.3d 740 (7th Cir. 2004). In *Chortek*, the plaintiffs were arrested for scalping tickets and then filed suit alleging an unreasonable arrest. *Id*. at 743. The Seventh Circuit held that non-criminal, non-violent offenses, such as the city ordinance violation at issue, could support an arrest under the Fourth Amendment as long as the officer had probable cause to believe the offense had been committed. *Id*. at 745.

Here, there is no dispute that Officer Blosenski had probable cause to believe that Koehl had violated Wis. § 30.681. Koehl concedes as much. He argues, however, that the arrest was unreasonable because Officer Blosenski knew him, his offense was punishable by no more than a forfeiture, he was cooperative and posed no threat, and his arrest was illegal under Wisconsin law.

The facts that Koehl may have been polite and respectful and that his offense was not punishable by incarceration are immaterial to the constitutional question before me. As *Atwater* makes clear, the Fourth Amendment permits arrests for minor offenses, even where the offender poses no threat to safety or the administration of justice. "[T]he standard of probable cause 'applies to all arrests, without the need to "balance" the interests and circumstances involved in particular

6

situations.'" 532 U.S. at 354 (quoting *Dunaway v. New York*, 442 U.S. 200, 208 (1979)). An officer's constitutional authority to arrest is not lost on account of the post-offense conduct of the offender.

Likewise immaterial is Koehl's claim that his arrest was illegal under Wisconsin law. Section 1983 "protects plaintiffs from constitutional violations, not violations of state laws . . . ." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003); *see also McKinney v.* George, 726 F.2d 1183, 1188 (7th Cir. 1994) ("If police officers have probable cause to make an arrest, as they did here, it is immaterial to the constitutionality of their conduct that the arrest may have violated state law."). Thus, Koehl's argument that his arrest violated state law misses the mark. But Koehl's argument that his arrest violated Wisconsin law is not only immaterial; it is also wrong.

The general procedure for collecting forfeitures for violations of Chapter 30 of the Wisconsin Statutes, which includes § 30.681, is set forth in Wis. Stat. § 23.50 to § 23.85. *See* Wis. Stat. § 23.50(1). As noted above, § 23.57(1) authorizes arrest without a warrant only if the offender refuses to accept a citation, identify himself, or if arrest is necessary to prevent imminent bodily harm to enforcing officer or another. While it is true that Koehl did not refuse to accept a citation or identify himself, given his intoxicated condition and the fact that he was operating a jet ski without any lights, it was reasonable for the officers to conclude that his arrest was necessary to protect either Koehl himself or anyone else out on the water that night from imminent bodily harm. Thus, his arrest was justified under § 23.57(1)(c). Koehl's arrest was also lawful, however, even apart from the risk of bodily harm he posed to himself or others. For even though the general procedure set forth in § 23.50 to § 23.85 does not authorize warrantless arrest for a first-time

7

violation of § 30.681, the specific procedure for processing such violations requires that the suspected offender be arrested if probable cause exists.

Wisconsin law provides that any person who operates a motorboat upon the waters of the State of Wisconsin is deemed to have given consent to provide one or more samples of his or her breath, blood or urine for chemical testing to determine whether he or she has violated the intoxicated boating law. Wis. Stat. §§ 30.683. Under § 30.684 a person must submit to one or more chemical tests of his or her breath, blood, or urine "if he or she is arrested for a violation of the intoxicated boating law and if he or she is requested to submit to the test by a law enforcement officer." Arrest is a precondition to the obligation to provide a sample and must be shown in order to establish an unlawful refusal under § 30.684(5). Finally, § 30.687 specifically provides that a person arrested for intoxicating boating who has an alcohol concentration of more than .05 may not be released within twelve hours after the arrest except to the person's "attorney, spouse, relative or other responsible adult." These statutory provisions that specifically govern violations of § 30.681 clearly control over any conflicting provisions in the more general procedure set forth in Chapter 23 of the Wisconsin Statutes. *See Gillan v. City of Neenah*, 580 N.W.2d 628, 634 (Wis. 1998) ("Where general and specific statutory provisions are in conflict, the specific provisions take precedence."). It therefore follows that Koehl's arrest was proper under Wisconsin law, as well as the Constitution.

**2. Reasonableness of Subsequent Frisking, Handcuffing and Transportation**

Koehl also argues that the manner of his arrest was unreasonable. He claims that the officers acted illegally in subjecting him to a search, handcuffing him and in failing to immediately provide

8

first aid to the laceration he sustained on his forehead. In Koehl's view, there is sufficient evidence for a jury to find that the officers used excessive force and were deliberately indifferent to his medical needs.

The Supreme Court has held that "all claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard." *Graham v. Connor,* 490 U.S. 386, 395 (1989) (internal quotation marks omitted). The test of reasonableness is "not capable of precise definition or mechanical application." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Application of the test to a claim of excessive force in the course of an arrest or investigatory stop requires consideration of the specific facts and circumstances of the case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* It must also take into consideration "the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Id.* at 397.

In a further refinement of the reasonableness standard in this context, the Court has suggested that where probable cause for an arrest exists, it is not necessary to perform the balancing analysis unless the challenged search or seizure was "conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests." *Whren v. United States*, 517 U.S. 806, 818 (1996); *see also Atwater*, 532 U.S. at 352-53 ("[U]nder current doctrine the

9

preference for categorical treatment of Fourth Amendment claims gives way to individualized review when a defendant makes a colorable argument that an arrest, with or without a warrant, was 'conducted in an extraordinary manner, unusually harmful to [his] privacy or even physical interests.'") (quoting *Whren*, 517 U.S. at 818).

Koehl does not contend that the officers conducted his arrest in an extraordinary manner. *Cf. Atwater*, 532 U.S. at 354-355 (holding that where arrestee was "handcuffed, placed in a squad car, and taken to the local police station, where officers asked her to remove her shoes, jewelry, and glasses, and to empty her pockets, . . . photograph[ed her] and placed her in a cell, alone, for about an hour, after which she was taken before a magistrate, and released on $310 bond," arrest was not extraordinary); *United States v. Robinson*, 414 U.S. 218, 235 (1973) ("[I]n the case of a lawful custodial arrest a full search of the person is . . . a 'reasonable' search under th[e Fourth] Amendment."). To the contrary, he argues that they were merely following county policy, which required them to frisk and handcuff all arrestees. Koehl cites *Braun v. Baldwin*, 346 F.3d 761 (7th Cir. 2003), which implies that the use of handcuffs may be excessive if the arrest "was effected in an unusual or improper manner." *Id.* at 763. However, the *Braun* court concluded that because "there is no indication that his arrest was effected in an unusual or improper manner, the excessive-force claim has no possible merit." *Id*. Koehl also provides a string cite to a number of cases, most of them in other circuits, in which courts permitted plaintiffs to proceed on claims that handcuffing constituted excessive force. In all these cases, the plaintiffs were detained without probable cause or their arrests were effected in an extraordinary manner. *See, e.g., Herzog v. Village of Winnetka*, 309 F.3d 1041, 1043 (7th Cir. 2002) ("[W]e must accept that the arrest was made without probable cause and hence in violation of the Fourth Amendment's prohibition against

10

unreasonable searches and seizures; and that without provocation or excuse Powell shoved the middle-aged female plaintiff to the ground and Colleran refused to loosen the plaintiff's chafing handcuffs, both instances of excessive force[.]"). Because the officers arrested Koehl on probable cause and followed ordinary procedures in doing so, the claim that frisking and handcuffing constituted an excessive use of force in this case has no merit.

Koehl finally argues that the officers acted unconstitutionally in failing to give medical attention to the cut on his forehead while transporting him to the hospital. Koehl does not contend that the officers deliberately caused the cut. *Cf. Proffitt v. Ridgway*, 279 F.3d 503, 506 (7th Cir. 2002) (holding that mere negligence is insufficient to impose liability on § 1983 defendant for failing to ensure detainee's safety). Rather, Koehl contends that after he received the cut by accident, the officers deliberately ignored it during the trip to the hospital. While Koehl's claim at first blush appears to be one for deliberate indifference to a serious medical need under the Due Process Clause of the Fourteenth Amendment, *see Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) ("The Eighth Amendment protects prisoners from deliberate indifference to a serious injury or medical need. This protection is extended to arrested persons and pretrial detainees under the Due Process Clause of the Fourteenth Amendment.") (internal citations omitted), Koehl states at the beginning of his brief that "[t]he federal claims are based on the 4th Amendment to the U.S. Constitution" (Pl.'s Resp. at 1), and makes no argument or citation to the contrary thereafter. The Fourth Amendment provides no remedy for deliberate indifference to Koehl's serious medical needs after his arrest. Thus, to the extent Koehl relies on the Fourth Amendment, his claim against the officers fails.

11

Even if Koehl was asserting his deliberate indifference claim under the Fourteenth Amendment, however, it would still fail. At most, Koehl alleges that the officers delayed treatment for a relatively minor cut for approximately fifteen minutes by not immediately rendering first aid themselves or taking a shorter route to the hospital. Even assuming the cut constituted a "serious medical need," *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976), which in itself is doubtful, such a brief delay in providing treatment does not amount to a constitutional violation. *See Gutierrez v. Peters*, 111 F.3d 1364, 1374-75 (7th Cir. 1997) (holding six-day delay in seeing doctor for infected cyst does not show deliberate indifference). Because Koehl's medical complaint was of a non-emergency nature, the short delay in providing treatment did not amount to deliberate indifference. Summary judgment will therefore be granted as to this part of his claim as well.

**3. Municipal Liability and Qualified Immunity**

Because the officers did not violate Koehl's constitutional rights, the county cannot be liable. *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994) ("[I]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."). Accordingly, his claim against the county fails as well. And given my holding that Koehl's constitutional rights were not violated, there is no need to address the issue of qualified immunity for the constitutional claims.

**4. State Law Claims**

Defendants also seek summary judgment on Koehl's state law claims for battery and negligence. Having determined that all of Koehl's federal law claims should be dismissed on

12

summary judgment, however, I am authorized under 28 U.S.C. § 1367(c)(3) to decline jurisdiction over the remaining state law claims. In fact, district courts are generally encouraged to decline jurisdiction in such cases so as "to minimize the occasions for federal judges to opine on matters of state law." *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir.1997). If, on the other hand, "an interpretation of state law that knocks out the plaintiff's state claim is obviously correct, the federal judge should put the plaintiff out of his misery then and there, rather than burdening the state courts with a frivolous case." *Id.; see also Boyce v. Fernandes*, 77 F.3d 946, 951 (7th Cir.1996) ("The normal practice of course is to relinquish jurisdiction over a supplemental claim when the main claim is dismissed before trial, but if the supplemental claim is easily shown to have no possible merit, dismissing it on the merits is a time saver for everybody.").

Here, I am satisfied that Koehl's state law claim for battery is without merit and should be dismissed with prejudice. Under Wisconsin law, battery requires intent to harm. *Brabazon v. Johannes Bros. Co.*, 286 N.W. 21, 26 (Wis. 1939); Wis JI-Civil 2005 (1994). As noted above, even Koehl admits that the injury he sustained was accidental and that he has no reason to believe either Officer Blosenski or Deputy Thobaben intended to injure him in placing him in the squad. Absent such evidence, the battery claim fails as a matter of law.

Koehl's negligence claim, however, is not clearly without merit. Of course, given his degree of intoxication, it may be difficult to establish that the negligence of the officers, assuming they were negligent, exceeds his own. But Wisconsin courts regard the apportionment of negligence between parties as "particularly within the province of the jury." *Bentzler v. Braun,* 149 N.W.2d 626, 642 (Wis. 1967). Moreover, the determination of whether the County or its officers may be liable to Koehl for negligence will also require application of Wisconsin's notice of claims statute

13

and consideration of its own form of statutory immunity for local governments and their employees. *See* Wis. Stat. 893.80(1) and (4).[4] Resolution of such issues under Wisconsin law is not a simple matter. Compare *State Dep't of Natural Resources v. City of Waukesha*, 515 N.W.2d 888 (Wis. 1994), with *Fritsch v. St. Croix Cent. School Dist.*, 515 N.W.2d 328 (Wis. App. 1994), and *Kimps v. Hill*, 546 N.W.2d 151 (1996), with *Cords v. Anderson*, 259 N.W.2d 672 (Wis. 1977). Under these circumstances, the presumption in favor of relinquishing jurisdiction over the state claim, *Van Harken*, 103 F.3d at 1354, is not overcome. Accordingly, I decline to exercise jurisdiction over Koehl's negligence claim. But rather than dismiss the remaining claim without prejudice, I conclude that it would be more appropriate to remand the claim to the Circuit Court for Waupaca County, Small Claims Division, from which it was removed. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("We conclude that a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate."). Koehl has already paid his filing fee, and there is no suggestion that he sought to manipulate this court's jurisdiction. Under these circumstances, remand is appropriate.

**ORDER**

For the reasons set forth above, **IT IS ORDERED** that the defendants' motion for summary judgment is **GRANTED** in part. Plaintiff's federal claims and his state law claim for battery are dismissed with prejudice. The Court relinquishes federal jurisdiction over plaintiff's state law

---

[4]The question of immunity assumes that Koehl's injury does not arise out of the operation of a motor vehicle. *See* Wis. Stat. § 345.05 (concerning municipal liability for motor vehicle accidents).

14

negligence claim and remands that claim to the Circuit Court for Waupaca County. Each party shall bear their own costs. A certified copy of this order shall be mailed by the clerk to the clerk of the Circuit Court for Waupaca County pursuant to 28 U.S.C. § 1447(c). The clerk of court shall enter judgment accordingly.

Dated this   21st   day of February, 2006.

>                             s/ William C. Griesbach
>                             William C. Griesbach
>                             United States District Judge

15

Case 1:05-cv-00384-WCG   Filed 02/21/06   Page 15 of 15   Document 33